UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
T-MOBILE USA, INC.,

                              Plaintiff,              **MEMORANDUM AND ORDER**

  – against –                                         12-CV-5598 (SLT)(JMA)

WHOLESALER212, INC., *et al.*,

                              Defendants.
-------------------------------------------------------------x

**TOWNES, United States District Judge:**

       In mid-November 2012, plaintiff T-Mobile USA, Inc. ("Plaintiff" or "T-Mobile") commenced this action for damages and injunctive relief against defendants Wholesaler212 Inc., Unlocking 4 Less, Guy Sultan a/k/a Guy Sultana and Haim Tourjman (collectively, "Defendants"), alleging that Defendants engaged in a "Subsidy Theft Scheme" involving T-Mobile prepaid wireless telephones. On November 30, 2012, Defendants, proceeding *pro se*, stipulated to the entry of a preliminary injunction and an "Order Granting Expedited Discovery and Order to Preserve Evidence." *See* Stipulation for Entry of Preliminary Injunction, Expedited Discovery and an Order to Preserve Evidence, dated Nov. 30, 2012, p. 1. Defendants took no action thereafter, however, and in January 2013, the Clerk of Court entered a default against all four Defendants pursuant to Fed. R. Civ. P. 55(a).

       In March 2013, Plaintiff moved for a default judgment pursuant to Fed. R. Civ. P. 55(b)(2), seeking injunctive relief, money damages of $1,047,254.64, and leave to file a petition for an award of reasonable attorneys' fees and costs. In a memorandum and order dated February 11, 2014, and February 20, 2014 (the "Prior M&O"), this Court stated that, although it was "satisfied that Plaintiff is entitled to injunctive relief," it was "not satisfied, based on the documents attached to Plaintiff's Memo, that Plaintiff is entitled to $1,047,254.64 in damages." Prior M&O at 2. Accordingly, the Court directed Plaintiff to file supplemental submissions in

support of its request for damages. The Court deferred decision on whether it would be appropriate to grant attorneys' fees and costs but, in the interests of expedience, granted Plaintiff leave to file a petition for an award of reasonable attorneys' fees and costs along with the supplemental submissions.

In response to the Prior M&O, Plaintiff has submitted, *inter alia*, a declaration from Ronald Oh, the Business Analysis Manager in Plaintiff's Operations Investment Analytics Department (hereafter, the "Oh Declaration") and a declaration from Stuart Drobny, the President of Stumar Investigations ("Stumar")—a firm hired by Plaintiff to investigate the business practices of Defendants (hereafter, the "Drobny Declaration"). The Oh Declaration explains the basis for Plaintiff's assertion that it lost $276.00 for each wireless handset "trafficked" by Defendants, while the Drobny Declaration explains how Plaintiff calculated the number of wireless handsets "trafficked" by Defendants. In addition, Plaintiff has submitted a "Petition for an Award of Reasonable Attorneys' Fees and Costs," which posits that this is one of the "exceptional cases" in which an award of attorneys' fees and costs is merited under section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

*The Oh Declaration*

The Oh Declaration explains that the $276.00 per handset figure is comprised of two components: an "Average Market Invest/Lost Subsidy" of $21.67 per handset and "average lost revenue" of $254.33. The former reflects the average cost to Plaintiff of selling each handset, which includes both the lost subsidy and "various marketing, sales, customer service and other costs" incurred by Plaintiff in selling a handset. Oh Declaration, ¶ 6(b). The latter reflects the profits which a particular phone would be expected to generate for T-Mobile if it were in the hands of a legitimate T-Mobile customer. *Id.*, ¶ 6(a).

Plaintiff is entitled to recover the "Average Market Invest/Lost Subsidy" of $21.67 per handset. As Mr. Oh explains, Defendants' activities deprived Plaintiff of "the opportunity to recoup the subsidy and other costs associated with" an individual phone. *Id.*, ¶ 4. Plaintiff should be compensated for these losses.

Plaintiff is not entitled to recover "average lost revenue," however. Although Mr. Oh claims that Defendants' activities deprived Plaintiff of "the opportunity to earn profits if [*sic*] expected to earn by providing wireless service to a legitimate T-Mobile customer," *id.*, there is no proof that Defendants' actions prevented any potential legitimate customers from obtaining a T-Mobile prepaid phone. To be sure, Mr. Oh states that "[i]llicit acquisition and resale of handsets pursuant to the Subsidy Theft . . . results in shortages from time to time of T-Mobile handsets in retail stores." *Id.* at ¶ 5. However, there is no evidence that Defendants' activities, which involved only a few hundred phones, resulted in these shortages or that Plaintiff lost any legitimate customers because of a shortage attributable to Defendants. Moreover, there is no proof that Defendants' customers would have become T-Mobile customers absent Defendants' actions.

*The Drobny Declaration*

The Drobny Declaration indicates that, with the exception of the 15 Samsung T-139 phones which Stumar purchased on August 23, 2012, Plaintiff lacks actual knowledge of precisely how many T-Mobile prepaid phones Defendants purchased. Rather, Mr. Drobny estimates the number based on e-mail advertisements sent by Wholesaler212 and/or Sultan. According to Mr. Drobny, who has "conducted hundreds of handset trafficking investigations" and is "intimately familiar with all facets of their operations," Drobny Declaration at ¶ 4, traffickers do not advertise a specific quantity of a certain type of phone unless they have the

phones in their inventory. *See id.* at ¶¶ 7, 10. Thus, while Stumar only purchased 15 T-139 telephones on August 23, 2012, Mr. Drobny assumes that Defendants also had at least another 85 T-139 telephones because Sultan's e-mail to Stumar's investigator stated that Wholesaler212 had 100 T-139 telephones for sale. Using this same analysis, Mr. Drobny estimates that Defendants purchased 1,166 T-Mobile telephones by totaling the number of telephones advertised in Defendants' e-mails. Copies of those e-mail advertisements appear as Exhibit C to Plaintiff's complaint, and are painstakingly summarized in Exhibit 1 to the Drobny Declaration.

This Court accepts the commonsense proposition that Defendants would not advertise telephones that they did not actually have. However, this Court is not prepared to accept the assumption that each subsequent advertisement relates to phones other than those which were advertised before. Rather, this Court has scrutinized both Exhibit 1 to the Drobny Declaration and the advertisements themselves and, for the reasons explained below, concludes that the evidence provided by Plaintiff establishes that Sultan and/or Wholesaler212 purchased a total of 702 telephones.

Exhibit 1 indicates that on August 16, 2012, Sultan issued an e-mail advertisement stating that Wholesaler212 had 300 Samsung Galaxy Blaze telephones, 100 Samsung Galaxy S2 telephones, and 100 Samsung Galaxy S3 telephones for sale. Less than two weeks later, on August 28, 2012, Sultan sent out a second e-mail advertisement, stating that Wholesaler212 had 50 of each of the three types of telephones listed above. On August 30, 2012, and on September 4, 2012, Sultan sent additional e-mail advertisements which again stated that Wholesaler212 had 50 of each type of telephone.

Mr. Drobny's analysis assumes that the telephones advertised on August 16, 2012, are distinct from the telephones which were advertised in the subsequent e-mails. Similarly, Mr.

4

Drobny assumes that the 50 telephones advertised on August 28, 2012, are not the same telephones which were advertised two days later on August 30, 2012, and that the telephones in Sultan and/or Wholesaler212's possession on September 4, 2012, had never been advertised previously. However, there is no evidence to substantiate these assumptions. Indeed, it seems as likely—if not more likely—that Sultan and/or Wholesaler212 had 300 Samsung Galaxy Blaze telephones, 100 Samsung Galaxy S2 telephones, and 100 Samsung Galaxy S3 telephones in inventory as of August 16, 2012, and had yet to sell 50 of each of these phones by September 4, 2012.

On September 5, 2012, Sultan advertised that he had at least two Samsung Galaxy S2 telephones available—at least one in both black and white—and at least two Samsung Galaxy S3 telephones available—at least one in both blue and white. The S2 telephones were priced $10 to $20 higher than the S2 telephones which Sultan and/or Wholesaler212 had offered previously, while the S3 telephones were priced $20 to $30 higher. Since electronic equipment generally does not appreciate in value as it ages, this Court will accept Mr. Drobny's assertion that the September 5, 2012, advertisement pertained to at least four telephones which had not been previously offered.

There is no evidence, however, that the telephones which Sultan and Wholesaler212 advertised on September 13 and September 19, 2012, were different from those which were advertised on September 5, 2012. Indeed, the advertisements which Sultan e-mailed on September 13, 2012, and September 19, 2012, were not only identical to each other, but identical to the advertisement which Sultan e-mailed on September 5, 2012. One cannot determine from this evidence how many, if any, of each type of telephone Sultan and/or Wholesaler212 sold between September 5 and September 19, 2012.

5

On September 25, 2012, Sultan e-mailed an advertisement indicating that Wholesaler212 had at least one Galaxy S2 and at least one Galaxy S3 available for sale at $365.00 and $510.00, respectively. The price for the S2 was $10.00 lower than the price for the S2 telephones listed on September 4, 2012, and the S3 was $5.00 cheaper. There is no reason to believe that the telephones offered on September 25, 2012, were distinct from those offered before. Rather, it seems likely that these were the same telephones being offered at a discount.

On October 12, 2012, Sultan advertised 50 blue and 50 white Galaxy S3 telephones. These blue telephones were $45.00 cheaper than the blue Galaxy S3 which Sultan and Wholesaler212 had advertised in September 2012, while the white telephone cost $40.00 less than before. Again, there is no way to know whether the phones advertised on October 12, 2012, were distinct from those which had been advertised in September 2012. Accordingly, this Court will assume that Wholesaler212 had at least 50 blue and 50 white S3 telephones as of September 5, 2012, and that the phones advertised on October 12, 2012, were some or all of the same telephones, being offered at a discount.

On October 19, 2012, Sultan sent an e-mail stating that Wholesaler212 had at least one Galaxy S2 and at least one Galaxy S3 available for sale, this time at $360.00 and $500.00, respectively. The price for the S2 was $5.00 lower than it had been on September 25, 2012, and the price for the S3 was $10.00 lower. Again, there is no reason to believe that the telephones offered on October 19, 2012, were not the same ones offered before.

For the reasons set forth above, this Court concludes that Sultan and/or Wholesaler212 purchased a total of 702 pre-paid telephones from T-Mobile: the 500 phones first listed on August 16, 2012; the 100 T-139 telephones mentioned in Sultan's August 23, 2012, e-mail; 50 blue and 50 white Galaxy S3 telephones; and one black and one white Galaxy S3. Since

Plaintiff is entitled to recover the "Average Market Invest/Lost Subsidy" of $21.67 for each of these telephones, this Court will award Plaintiff a total of $15,212.34. Although the evidence indicates that defendant Sultan alone advertised the telephones, acting in his capacity as Sales Director of Wholesaler212, Plaintiff's complaint alleges that Sultan was part of a conspiracy involving the other Defendants. *See* Complaint at ¶¶ 82-83. Accordingly, this Court will award the damages against all four defendants, jointly and severally.

***Trebling of Damages, Attorney's Fees and Costs***

In Plaintiff's original motion papers, and again in its supplemental submission, Plaintiff requests that this Court award treble damages under the Lanham Act, 15 U.S.C. §1051 *et seq*. In addition, Plaintiff's "Petition for an Award of Reasonable Attorneys' Fees and Costs" requests that this Court award attorneys' fees and costs pursuant to the Lanham Act. For the reasons set forth below, both requests are denied, except with respect to costs.

Both of these requests rely on 15 U.S.C. § 1117(a), which prescribes civil remedies for violations of 15 U.S.C. § 1125(a) and other sections of the Lanham Act. Section 1117(a) provides, in pertinent part:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office ... shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to

> be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

This Court agrees with Plaintiff that, by defaulting in this case, Defendants have admitted that they wilfully used Plaintiff's registered marks without authorization in violation of 15 U.S.C. § 1125(a). However, this Court does not agree that, under the circumstances of this case, enhancement of Plaintiff's actual damages or the awarding of attorney's fees would be appropriate.

*Enhancement of Damages*

Plaintiff's argument in favor of trebling consists of a single sentence:

> In light of Defendants' willful violations of the Lanham Act and absence from this case, and because they have undoubtedly sold hundreds, if not thousands, of additional Prepaid Phones, causing damage well beyond that actually confirmed by T-Mobile's investigation, trebling is appropriate here.

Plaintiff's Motion for Entry of Default Final Judgment and Permanent Injunction against Defendants and Memorandum of Law in Support, p. 22. This sentence suggests four reasons for trebling: (1) Defendants' actions were "willful," (2) Defendants were "absen[t] from this case," (3) Defendants "undoubtedly sold . . . additional Prepaid Phones" beyond those described in the advertisements sent to Stumar, and (4) Defendants' actions caused damage to Plaintiff beyond that compensated by the damages calculated above. None of the reasons are persuasive.

First, the willfulness of the infringing conduct is not the determinant of whether enhanced damages are appropriate under 15 U.S.C. § 1117(a). "The statute makes clear that an enhancement of actual damages must be for 'compensation and not a penalty.'" *Harris v. Fairweather*, No. 11 Civ. 2152 (PKC)(AJP), 2012 WL 3956801, at *6 (S.D.N.Y. Sept. 10, 2012) (quoting 15 U.S.C. § 1117(a). Accordingly, unless there is a "compensatory, non-punitive basis

8

for enhancing the actual damages awarded" to Plaintiff, trebling is inappropriate even in cases in which the infringing conduct is "malicious, fraudulent, willful, and deliberate." *Ramada Franchise Sys., Inc. v. Boychuk*, 283 F. Supp. 2d 777, 792 (N.D.N.Y. 2003).

Second, the allegation that Defendants were "absen[t] from this case" does not support an award of treble damages for the same reason stated above. Defendants failure to defend this action did not result in compensable damages to Plaintiff. Moreover, this characterization is inaccurate, since Defendants did appear *pro se* in this action and stipulated to the entry of a preliminary injunction.

Third, Plaintiff's assertion that Defendants "undoubtedly" sold phones other than those listed in the advertisements sent to Stumar is entirely speculative. Defendants stipulated to the entry of a preliminary injunction almost immediately after this action was filed in November 2012, and there is no evidence that they have violated that injunction. Moreover, while Plaintiff has adduced no evidence as to Defendants activities prior to mid-August 2012, this Court will take judicial notice that the New York State Department of State's website indicates that Wholesaler212 was not incorporated until May 7, 2012.

Finally, even assuming that Defendants sold additional T-Mobile Prepaid telephones between mid-May and mid-August 2012, the damage to Plaintiff's marks was quite limited. The "Subsidy Theft Scheme" at issue subverted Plaintiff's business plan, but did little to tarnish Plaintiff's image. The phones which Defendants sold were genuine and new. There is no evidence that those who purchased unlocked telephones for use on another network were misled to believe that they were using T-Mobile's network. Indeed, the whole reason to purchase a telephone from Defendants was to obtain cellphone service without having to pay the high rates charged by T-Mobile and other leading providers.

9

*Attorneys' Fees*

Plaintiff has also petitioned this Court for an award of attorneys' fees under the Lanham Act, noting that 15 U.S.C. § 1117(a) permits this Court to award attorneys' fees in "exceptional cases." In its Petition for an Award of Reasonable Attorneys' Fees and Costs ("Petition"), Plaintiff suggests two reasons why this case is "exceptional." First, citing *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir. 2003), for the proposition that "the term 'exceptional case' . . . is generally understood to include one involving proven fraud, bad faith or wilfull infringement," Plaintiff notes that Defendants, through their default, have admitted . . . that their conduct in using the T-Mobile Marks was undertaken 'wilfully and deliberately.'" Petition at 1-2. Second, citing to three out-of-Circuit district court cases for the proposition that a "lack of cooperation and disrespect for the judicial process" can warrant an award of attorneys' fees, Plaintiff suggest that this Court can award legal fees against Defendants on this basis.

As Plaintiff correctly states, the award of attorney's fees is reserved for "exceptional cases." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012). However, a finding that an infringement is willful or in bad faith is only a "prerequisite" to finding a case "sufficiently 'exceptional' to warrant an award of fees" under section 1117(a). *Id*. at 108-09 (citing *Patsy's Brand*, 317 F.3d at 221). A finding of willfulness or bad faith does not automatically mandate an award of attorneys' fees under the Lanham Act. *See Mister Softee of Brooklyn, Inc. v. Boula Vending Inc*., 484 F. App'x 623, 624 (2d Cir. 2012) (summary order). Rather, "an award of attorney fees *may* be justified when bad faith infringement has been shown." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc*., 80 F.3d 749, 753 (2d Cir.1996) (emphasis added).

The decision as to whether or not to award fees is within the district court's discretion. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 194 (2d Cir. 1996). A district court abuses its discretion if it fails to at least consider awarding attorney's fees when bad faith is established. *Goodheart Clothing Co., Inc. v. Laura Goodman Enter., Inc.*, 962 F.2d 268, 272 (2d Cir. 1992). Yet, "courts routinely decline to award attorneys' fees in cases involving willful infringement." *Mister Softee, Inc. v. Boula Vending Inc.*, No. 10-CV-2390 (ARR) (JMA), 2011 WL 705139, at *1 (E.D.N.Y. Feb. 17, 2011) (citing cases), *aff'd*, 484 F. App'x 623 (2d Cir. 2012).

In light of the foregoing, this Court finds that Defendants' wilfullness alone is not a sufficient reason for awarding attorneys' fees. Moreover, the only other reason offered by Plaintiff is based on three out-of-Circuit cases which are either distinguishable or which rely on a misreading of the law. The first case cited by Plaintiff—*Lien v. Compusoft of Kalamazoo, Inc.*, No. 1:89CV-104, 1991 WL 641575, at *5 (E.D. Mich. Mar. 13, 1991)—is distinguishable because the defendant in that case failed to follow through on promises made during pre-litigation negotiations and, after litigation was commenced, "was completely uncooperative in plaintiff's efforts to protect its legitimate trademark rights . . . ." 1991 WL 641575, at *5. In contrast, Defendants appeared in this case and consented to the entry of a preliminary injunction. The other two cases cited by Plaintiff—*Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494 (C.D. Cal. 2003), and *Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd.*, 175 F.R.D. 658 (S.D.Cal. 1997)—both incorrectly cite *Lien* for the proposition that a case may be considered "exceptional" where the defendant disregards the proceedings and does not appear. *See* 219 F.R.D. at 502; 175 F.R.D. at 663.

While Plaintiff is not entitled to attorney's fees, it is entitled to costs under the express terms of 15 U.S.C. § 1117(a). As noted above, that section provides that when a trademark

infringement is established, the plaintiff is entitled, *inter alia*, to "the costs of the action." In this context, this phrase refers to the list of recoverable costs set forth in 28 U.S.C. § 1920. *See Days Inn Worldwide, Inc. v. Amar Hotels, Inc*., No. 05 Civ. 10100 (KMW)(KNF), 2008 WL 2485407, at *7 (S.D.N.Y. June 18, 2008) (report and recommendation of Fox, *MJ*).

## *CONCLUSION*

For the reasons set forth above, this Court will award damages in favor of Plaintiff and against all four Defendants, jointly and severally, in the amount of $15,212.34. This Court will not award attorneys' fees, but will award taxable costs as set forth in 28 U.S.C. § 1920. Plaintiff is directed to file a proposed judgment, a proposed permanent injunction, and a bill of costs on or before April 25, 2014.

**SO ORDERED.**

/s/
SANDRA L. TOWNES
United States District Judge

Dated: March 31, 2014
Brooklyn, New York